(63 App. Div. 227.)

## MARCUS v. BLOOMINGDALE.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

BROKERS—COMPENSATION—FALSE REPRESENTATIONS—FRAUD.

Where a broker is instructed by his principal to ascertain the actual rentals of a property sought in exchange, and the agent procures an erroneous statement thereof, though believing it to be true, which the principal relies on, and contracts to exchange the property, but rescinds the contract after learning the facts, the broker is not entitled to compensation.

Appeal from trial term, New York county.

Action by Solomon Marcus against Joseph B. Bloomingdale to recover compensation for broker services. From a judgment in favor of plaintiff, and from an order denying a new trial, the defendant appeals. Reversed.

Plaintiff is a real-estate broker, and brought this action to recover commissions which he claims to have earned in effecting a contract between defendant and one Loy for the exchange of premises owned by defendant in Yonkers for premises Nos. 62 and 64 East Ninetieth street, the legal title to which was in Loy, but which were in fact owned by one Bradley. A contract in writing, dated the 27th day of January, 1898, for the exchange of such lands, was executed by the owners, and the 24th day of February, 1898, was therein fixed as the time for consummating the contract. This time was subsequently extended four days. The New York parties were represented in the transaction by a broker named Potter. The employment of plaintiff by defendant was conceded. At the time of submitting to defendant the proposition for taking the New York property in exchange, plaintiff delivered to him a writing containing a diagram of the premises, the valuation, the incumbrances, the number of stories, and stating that the premises were all occupied on yearly leases, the rents aggregating $17,000 per annum. It does not appear from what source plaintiff obtained this information. According to plaintiff's testimony, the defendant thereupon directed him to examine the property, and see what he thought of it. Subsequently defendant requested plaintiff to get a statement in detail and in writing of the rentals, running expenses, and taxes, and thereupon plaintiff applied to Potter, who obtained such a statement from Bradley, showing, among other things, that the "actual" rentals of premises No. 62 were $8,200, and of premises No. 64 were $6,800, aggregating $15,000. Bradley testified that these figures represented the rentals specified in the leases, but that the rents actually received pursuant to his understanding with his tenants were about

one-sixth less, and that he so informed Potter. Potter was not sworn as a witness, nor was plaintiff interrogated as to whether this information was communicated to him. It is undisputed that this statement was delivered to defendant prior to the execution of the contract. According to the testimony of defendant, when plaintiff first applied to assist him in disposing of the Yonkers property he told plaintiff not to come to him with any proposition for an exchange unless he (plaintiff) had thoroughly investigated, and found a real bona fide equity in the premises offered in trade. Defendant also testified that, when plaintiff delivered to him the statement first referred to, he instructed plaintiff to get him a statement showing the actual net income of the property, the rents and disbursements, plaintiff not being positive as to whether the rentals were as stated. While it would appear that the defendant was aware that the statement secondly referred to was furnished by the owners of the New York property, yet he says that, when it was delivered to him by plaintiff, the latter represented that it contained the actual rentals and the actual expenditures, and that the figures were correct. Prior to signing the contract, defendant viewed the premises from the outside, rode up in the elevator, and inquired of the janitor how many apartments were filled, but made no inquiries as to the rentals. Upon learning that the rentals were one-sixth less than as was represented to him, he refused to consummate the contract. Defendant testified that in signing the contract he relied upon the written statements referred to and the representations of plaintiff as to the actual rentals, and that he had no other information on the subject. He also testified that when he employed plaintiff as a broker it was upon the express understanding that plaintiff was to represent him, and no one else. This plaintiff denies, and he also denies having made any personal representations as to the actual rentals. It appeared without controversy that at the outset plaintiff and Potter agreed to divide their commissions, and it was shown, under defendant's objection and exception, that it was the custom in New York for brokers to divide their commissions. Defendant had been a real-estate broker and dealer in the city of New York to a limited extent for a number of years. The court charged the jury, in substance, that, the negotiations having resulted in a contract, plaintiff was entitled to recover, unless he made false representations regarding the rental income of the property, knowing them to be false, for the purpose of inducing the defendant to sign the contract, and that defendant, in signing, relied thereon. Defendant's counsel duly excepted to this charge, and to a further statement in the charge that, if the plaintiff knew of the false statements concerning the rent, he cannot recover commissions; and asked the court to charge "that the question of his knowledge is immaterial. If he stated that those were the actual rents, and Mr. Bloomingdale relied upon them, his knowledge would be immaterial,"—which was refused, and defendant's counsel duly excepted. At the request of plaintiff's counsel, the court also charged the jury "that, if they believed that Mr. Bloomingdale visited the property, and made inquiries as to the rents, that, in such event, Mr. Bloomingdale must fail on the issue of fraud," and to this defendant's counsel also excepted.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Sol. Kohn, for appellant.
Wales F. Severance, for respondent.

LAUGHLIN, J. The exceptions to the charge and to the refusals to charge set forth in the statement of facts require a reversal of the judgment. We find no evidence in the record that the defendant made inquiries at the premises concerning the rent, but the jury would naturally infer from the fact that defendant visited the premises, rode up in the elevator, and asked about the number of apartments rented, that he also asked and learned the truth about the rents received. If the jury believed the testimony of the defend-

ant with reference to his instructing plaintiff to ascertain the actual facts concerning the rentals, and as to the representations made by plaintiff in that regard, and that such representations were relied upon by defendant, plaintiff was not entitled to recover. Having employed plaintiff to ascertain this information, defendant was not obliged personally to reinvestigate the question. The information obtained, on account of its inaccuracy and untruthfulness, was of no value to defendant, and he was misled thereby into executing the contract, which, because the misrepresentations were also chargeable to the owners of the New York property, was not enforceable against him. To allow a broker to recover commissions on these facts, which the jury might have found from the evidence, would be inequitable, and we know of no principle of law requiring it. The jury evidently believed that the broker was not guilty of fraud, and under the charge of the learned trial judge they then had no alternative but to render a verdict in his favor. If these other facts, which, by the charge, the jury were precluded from acting upon, had been found in favor of defendant, it could not be said that the broker's commissions were earned when, through his failure to comply with his principal's instructions, he had induced the latter to enter into a fruitless contract.

Other questions, not wholly without merit, have been argued, but as they will not necessarily arise upon the new trial, which must be granted for the reasons already stated, we deem it unnecessary to consider them.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.